**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOCELYN ANNETTE JOHNSON, | Case No. CV 14-4407 JLS (KK) |
| Plaintiff, | |
| v. | ORDER DISMISSING PLAINTIFF'S FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND |
| COUNTY OF LOS ANGELES, et al., | |
| Defendants. | |

**I.**

**INTRODUCTION**

On December 30, 2014, plaintiff Jocelyn Annette Johnson, proceeding *in forma pauperis*, filed a First Amended Complaint ("FAC") alleging multiple civil rights claims against defendant County of Los Angeles ("County") and Los Angeles County Department of Public Social Services ("DPSS") employees Sylvia D. Franco and Maritza Cedeno. Upon screening the FAC pursuant to 28 U.S.C. § 1915(e)(2), the Court finds plaintiff's allegations fail to state a claim in regard to any of her causes

1

of action.  **Accordingly, the FAC is dismissed with leave to amend.  If plaintiff desires to pursue this action, she is ORDERED to file within 14 days of the service date of this Order a Second Amended Complaint remedying the deficiencies discussed below.**

## II.

### PROCEDURAL BACKGROUND

On June 18, 2014, plaintiff, who is at liberty and has been granted leave to proceed *in forma pauperis*, filed a *pro se* Civil Rights Complaint against defendant County and defendants Franco and Cedeno.  Docket No. ("dkt.") 3.  The Complaint named defendants Franco and Cedeno in their individual and official capacities.  Id. at 2.  On October 28, 2014, the Court dismissed the Complaint with leave to amend, finding the Complaint failed to: (1) state viable official capacity and municipal liability claims for a violation of the Due Process Clause of the Fourteenth Amendment; (2) state viable individual capacity claims for a violation of the Due Process Clause of the Fourteenth Amendment; and (3) state viable official and individual capacity claims for a violation of Title II of the Americans with Disabilities Act.  Dkt. 31.

On December 30, 2014, Plaintiff filed the instant FAC.  Dkt. 38.  As in the original Complaint, the FAC alleges two causes of action arising out of the denial of plaintiff's CalFresh benefits application by the defendants: (1) violation of plaintiff's rights under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution (pursuant to 42

2

U.S.C. § 1983); and (2) violation of plaintiff's rights to be free of disability-based discrimination in public services and programs under Title II of the Americans with Disabilities Act (specifically 42 U.S.C. § 12132). Id. at 4-5. In the FAC, plaintiff again sues defendants Franco and Cedeno in both their individual and official capacities. Id. at 1.

### III.

### FACTUAL ALLEGATIONS IN THE FAC

Plaintiff suffers from a number of disabilities, because of injuries to her spinal cord, knee, and brain. FAC at 5. Plaintiff also suffers from cardiovascular problems and lung disease. Id.

On April 20, 2012, plaintiff submitted a yearly redetermination application to DPSS, seeking CalFresh benefits for her granddaughter, Micha Beatrice Johnson, and for herself as a disabled household member. Id. at 2.

Subsequently, DPSS denied plaintiff's application. Id. The FAC alleges plaintiff's application was denied because defendant Franco did not properly assess plaintiff's eligibility for CalFresh benefits. Id. at 2-3. According to the FAC, defendant Franco determined plaintiff was ineligible because she did not appear disabled and looked "able-bodied." Id. at 3. Defendant Franco also remarked that plaintiff needed to secure a job to become eligible for CalFresh benefits. Id.

Plaintiff appears to have administratively appealed the denial and procured a remand of the decision. Id. On July 31, 2012, during proceedings on remand, plaintiff received a notice

from defendant Cedeno informing plaintiff that her eligibility for CalFresh benefits would be recalculated. Id.

DPSS subsequently denied plaintiff's application for CalFresh benefits. Id. After receiving notice of the denial, plaintiff contacted defendant Cedeno by phone. Id. Defendant Cedeno claimed plaintiff had too much income and would have to stop receiving spousal support payments in order to become eligible for CalFresh benefits. Id.

Plaintiff also contacted defendant Franco about the second denial of her application. Id. Defendant Franco claimed plaintiff was ineligible for CalFresh benefits. Id.

Plaintiff requested a rehearing of the decision to deny her application, but plaintiff's request was denied. Id. Plaintiff was instead instructed to file an appeal in California Superior Court to challenge the decision. Id.

**IV.**

**STANDARD OF REVIEW**

As plaintiff is proceeding *in forma pauperis*, the Court must screen the FAC, and is required to dismiss the case *at any time* if it concludes the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B); see also Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).

In determining whether a complaint fails to state a claim for purposes of screening under 28 U.S.C. § 1915(e)(2)(B)(ii), the Court applies the same pleading standard from Rule 8 of the

Federal Rules of Civil Procedure as it would when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  See Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012).

Under Rule 8(a), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Id. (quoting Twombly, 550 U.S. at 557).  In addition, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.  Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (quoting Twombly, 550 U.S. at 555).

In a civil rights case, a document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully

5

pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Woods v. Carey, 525 F.3d 886, 889-90 (9th Cir. 2008) (citations and internal quotation marks omitted). "[W]e have an obligation where the petitioner is *pro se*, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation and internal quotation marks omitted). If, however, a court finds that a *pro se* complaint has failed to state a claim, dismissal may be with or without leave to amend. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000). *Pro se* plaintiffs should be permitted leave to amend unless it is absolutely clear that the complaint's deficiencies cannot be cured. Cafasso v. General Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) ("Normally, when a viable case may be pled, a district court should freely grant leave to amend."). A court may consider factual allegations outside of the complaint in determining whether to grant leave to amend. See Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

**V.**

**DISCUSSION**

**A.  Failure to State Municipal Liability and Official Capacity Claims under Section 1983**

In order to state a claim for a civil rights violation under 42 U.S.C. section 1983, a plaintiff must allege that a particular defendant, acting under color of state law, deprived plaintiff of a right guaranteed under the U.S. Constitution or a

federal statute.  42 U.S.C. § 1983; see West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988).  However, a local government cannot be held liable under Section 1983 on a *respondeat superior* theory, solely because it employs a tortfeasor.  Monell v. Dep't of Soc. Serv. of City of New York, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  Local government entities, such as defendant County, may be held liable only if the alleged wrongdoing was committed pursuant to a government policy, custom or usage.  See Board of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 402-04, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997); Monell, 436 U.S. at 691; Gibson v. Cnty. of Washoe, 290 F.3d 1175, 1185 (9th Cir. 2002) (describing "two routes" to municipal liability: (1) where municipality's official policy, regulation, or decision violated plaintiff's rights, or (2) alternatively where municipality failed to act under circumstances showing its deliberate indifference to plaintiff's rights).  Under certain circumstances, a single act, when carried out by a municipal "policymaker," may also give rise to Monell liability, even in the absence of a municipal policy or custom.  See Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986) ("[Section 1983] municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances.").

Municipal liability may also arise when an unwritten custom becomes "so 'persistent and widespread' that it constitutes a 'permanent and well settled [municipal] policy.'"  Trevino v.

7

Gates, 99 F.3d 911, 918 (9th Cir. 1996) (quoting Monell, 436 U.S. at 691); see Thomas v. Baca, 514 F. Supp. 2d 1201, 1212 (C.D. Cal. 2007) ("A custom is a 'longstanding practice . . . which constitutes the standard operating procedure of the local government entity.'") (quoting Menotti v. City of Seattle, 409 F.3d 1113, 1151 (9th Cir. 2005)). "Isolated or sporadic incidents" are insufficient to establish an improper municipal custom. Trevino, 99 F.3d at 918 ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.") (internal citations omitted).

Suits against governmental officers in their official capacities are subject to the same requirements as Monell claims against local governments. See Kentucky v. Graham, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity of which an officer is an agent.") (internal citation omitted). Indeed, despite naming individual governmental officials, "[o]fficial-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" Id. (quoting Monell, 436 U.S. at 691). Hence, as with claims against local governments under Monell, to impose liability against officials acting in their official capacity, "the entity's 'policy or custom' must have played a part in the violation of federal law." Id. at 166 (internal citations

omitted).

Here, the FAC fails to allege the County maintained a policy or custom that caused any constitutional violation by a particular governmental actor. Additionally, plaintiff does not allege either defendant Franco or Cedeno was a municipal "policymaker" such that a single act by such officials would give rise to Monell liability. Nor does plaintiff claim the alleged misconduct was committed pursuant to any official government policy or custom. Rather, the alleged misconduct plaintiff complains of (*i.e.* the improper denial of her CalFresh benefits) was committed by individual officers *not* acting pursuant to California eligibility requirements for CalFresh benefits. Accordingly, plaintiff has failed to state viable municipal liability and official capacity claims. Plaintiff's claims against defendants County, and defendants Franco and Cedeno in their official capacities are therefore dismissed with leave to amend.

**B.   Failure to State Individual Capacity Claims under Section 1983**

In contrast to suits against governmental officers in their official capacities and claims against local governments, individual capacity suits under Section 1983 "seek to impose personal liability upon a government official for actions he takes under color of state law." Graham, 473 U.S. at 165. "A person deprives another of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform

9

an act which he is legally required to do that *causes* the deprivation of which [the plaintiff complains]." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

The Due Process Clause of the Fourteenth Amendment protects individuals against deprivations of "life, liberty, or property." U.S. Const. amend. XIV, § 1. "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005) (internal citations and quotation marks omitted).

Once a state creates a liberty interest, it cannot take it away without due process. See Swarthout v. Cooke, --- U.S. ----, 131 S. Ct. 859, 862, 178 L. Ed. 2d 732 (2011). A state official's failure to comply with state law that gives rise to a liberty or property interest may amount to a procedural due process violation, which can be vindicated under 42 U.S.C. § 1983. See Carlo v. City of Chino, 105 F.3d 493, 497–500 (9th Cir. 1997). However, not every state law creates an interest protected by the U.S. Constitution. "State law can create a right that the Due Process Clause will protect only if the state law contains "'(1) substantive predicates governing official decisionmaking, and (2) explicitly mandatory language specifying the outcome that must be reached if the substantive predicates have been met.'" James v. Rowlands, 606 F.3d 646, 656 (9th Cir. 2010) (quoting Bonin v. Calderon, 59 F.3d 815, 842 (9th Cir.

1995)). Hence, procedural due process protections apply to the termination of welfare benefits for those statutorily entitled to them. Goldberg v. Kelly, 397 U.S. 254, 260, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970).

Once it is determined that a protected interest has been violated, the question becomes "what process is due." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985) (internal quotation marks and citation omitted). "Due process is flexible and calls for such procedural protections as the particular situation demands." Mathews v. Eldridge, 424 U.S. 319, 334, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (internal alteration and quotation marks omitted). To determine what process is due, the Court must weigh three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews, 424 U.S. at 335.

Here, plaintiff fails to allege facts stating viable

11

Section 1983 individual capacity claims against defendants Franco and Cedeno, based on a procedural due process violation. Presumably, plaintiff claims the erroneous denial of her CalFresh benefits by the defendants constituted a deprivation of a state-law-created entitlement protected by the Due Process Clause. However, even assuming plaintiff's CalFresh benefits were denied in violation of state law, plaintiff has not shown the procedures employed in regard to her CalFresh benefits application were inadequate. Plaintiff appears to have been afforded the opportunity to appeal the repeated denials of her CalFresh benefits. <u>See</u> FAC at 3. Furthermore, plaintiff took advantage of this process and prevailed on appeal at least once, procuring remand of the initial denial of her CalFresh benefits application. <u>See</u> <u>id.</u> Plaintiff alleges no facts suggesting the appeals procedures were deficient in any way or created a risk of "erroneous deprivation" of her CalFresh benefits. <u>Mathews</u>, 424 U.S. at 335. Hence, plaintiff has failed to state a Section 1983 claim founded on a procedural due process violation against defendants Cedeno and Franco in their individual capacities. Plaintiff's individual capacity claims for procedural due process violations are therefore dismissed with leave to amend.

C. **Failure to State a Claim under Americans with Disabilities Act ("ADA")**

To prove a public program or service violates Title II of the ADA, a plaintiff must show: (1) she is a "qualified individual with a disability"; (2) she was either excluded from participation in or denied the benefits of a public entity's

12

services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of her disability. <u>Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.</u>, 114 F.3d 976, 978 (9th Cir. 1997) (citing 42 U.S.C. § 12132).

    A plaintiff may only assert a Title II claim against "public entities." 42 U.S.C. § 12132; <u>Miranda B. v. Kitzhaber</u>, 328 F.3d 1181, 1187-88 (9th Cir. 2003). While the Ninth Circuit has not squarely addressed the issue in a published opinion[1], district courts within the Ninth Circuit have determined the term "public entity" under Title II does not encompass a public official sued in his or her individual capacity. <u>See</u> <u>Chester v. Univ. of Washington</u>, No. C11-5937 BHS, 2012 WL 3599351 (W.D. Wash. Aug. 21, 2012); <u>A.B. ex rel. B.S. v. Adams-Arapahoe 28J School Dist.</u>, 831 F. Supp. 2d 1226 (D. Colo. 2011); <u>Thomas v. Nakatani</u>, 128 F. Supp. 2d 684 (D. Hawaii 2000); <u>Becker v. State. of Oregon, ODOC, et al.</u>, 170 F. Supp. 2d 1061, 1066 (D. Or.

---

[1] The Court notes two pre-2007 unpublished Ninth Circuit cases holding that no individual liability exists under Title II of the ADA. <u>See</u> <u>Burgess et al. v. Carmichael</u>, 37 F. App'x. 288 (9th Cir. 2001) (affirming district court's dismissal of plaintiff's claims against individual defendants and reasoning that plaintiffs may sue only "public entity" for such violations, and not government officials in their individual capacities) (citing <u>Vinson v. Thomas</u>, 288 F.3d 1145, 1156 (9th Cir. 2002)); <u>Young v. Lehaman</u>, 171 F. App'x. 625 (9th Cir. 2006) (claims against defendants under Title II of the ADA in their individual capacities are foreclosed) (citing <u>Vinson</u>, 288 F.3d at 1156, and <u>Alsbrook v. City of Maumelle</u>, 184 F.3d 999, 1005 n.8, 1011-12 (8th Cir. 1999) (<i>en banc</i>)). Pursuant to Ninth Circuit Rule 36-3, the Court does not rely on these unpublished dispositions in issuing its holding. <u>See</u> U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).

13

2000). Rather, only public agencies and public officials acting in their *official* capacity are subject to suit under Title II. Kitzhaber, 328 F.3d at 1187. Accordingly, to the extent plaintiff asserts Title II claims against defendants Franco and Cedeno in their *individual* capacities, she fails to state a cognizable claim.

On the other hand, plaintiff's Title II claims against defendant County and defendants Franco and Cedeno in their *official* capacities *are* cognizable. However, plaintiff fails to allege sufficient facts showing any of these defendants engaged in a Title II violation. Plaintiff does not state facts showing she was denied eligibility for the CalFresh benefits program *because* of her disabilities. Rather, according to the FAC, defendant Franco initially denied plaintiff's application for CalFresh benefits because Franco believed plaintiff to be "able-bodied." FAC at 3. Furthermore, defendant Cedeno's denial of plaintiff's application on remand was also not based on plaintiff's disabilities and was instead based on a calculation of plaintiff's income. Id. Accordingly, plaintiff fails to state a claim under 42 U.S.C. § 12132 against defendants County, and Franco and Cedeno in their official capacities. Plaintiff's ADA claim is therefore dismissed with leave to amend.

**VI.**

**LEAVE TO FILE A SECOND AMENDED COMPLAINT**

The instant FAC contains largely the same allegations as the original Complaint, and fails to correct the deficiencies identified in the Court's October 28, 2014 Order dismissing the original Complaint. Nonetheless, the Court will grant plaintiff

14

one more opportunity to cure such deficiencies. Accordingly, the Court grants plaintiff leave to file a Second Amended Complaint ("SAC").

Because any SAC will be plaintiff's **second** opportunity to amend her complaint to rectify pleading deficiencies, the Court advises plaintiff that it will not be disposed toward another dismissal without prejudice and with leave to amend. "[A] district court's discretion over amendments is especially broad 'where the court has already given a plaintiff one or more opportunities to amend his complaint.'" Ismail v. County of Orange, 917 F. Supp. 2d 1060, 1066 (C.D. Cal. 2012) (Valerie Baker Fairbank, J.) (quoting DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 n.3 (9th Cir. 1987)); see also Zavala v. Bartnik, 348 F. App'x 211, 213 (9th Cir. 2009) ("Dismissal with prejudice was proper because Zavala was given two prior opportunities to amend his complaint in order to correct the deficiencies identified by the district court but failed to do so.").

If plaintiff fails to timely file a SAC, the dismissal will be converted to a "with prejudice" dismissal due to a lack of prosecution and failure to comply with the Court's order. Likewise, if plaintiff does file a SAC, but the SAC continues to assert claims on which relief cannot be granted, **the dismissal will be converted to a "with prejudice" dismissal.**

### VII.
### CONCLUSION

For the foregoing reasons, the FAC is subject to dismissal. Accordingly, **IT IS ORDERED THAT:**

**Within 14 days of the service date of this Order, plaintiff**

15

**may file a Second Amended Complaint ("SAC") to attempt to cure the deficiencies discussed above.** The Clerk is directed to provide plaintiff with a Central District of California Civil Rights Complaint Form, CV-66, to facilitate plaintiff's filing of an SAC if she elects to proceed with this action. Plaintiff is strongly encouraged to use that form.

If plaintiff chooses to file an SAC, the SAC should bear the docket number assigned to this case, be labeled "Second Amended Complaint," and **be complete in and of itself** without reference to the FAC or any other pleading, attachment, or document.

**Plaintiff is admonished that if she fails to timely file a sufficient SAC as described above, the Court will recommend that this action be dismissed with prejudice on the grounds set forth above and/or for failure to diligently prosecute.**

DATED: January 14, 2015

HON. KENLY KIYA KATO
UNITED STATES MAGISTRATE JUDGE

16